Next case, United States v. Thompson, Mr. Murphy Good morning. May it please the court. Judge Posner, Judge Bower, Judge Mannion. In denying Mr. Thompson's motion to suppress, the district court comprehensively ignored not only the numerous issues raised by the defendant, but most significantly, here, this court's well-established precedent regarding the appropriate analysis that must be made in assessing the impact of Fourth Amendment violations on a subsequent consent to search. Further, the district court ignored this court's sound precedent regarding the analysis necessary for assessing the voluntariness of a consent to search. As a result, this court should vacate Mr. Thompson's sentence and remand this case to the district court, said that those essential findings are made. Mr. Thompson has alleged that five separate Fourth Amendment violations occurred to him in rapid succession at his apartment in downtown Chicago on March 6, 2013. In short, the district court neither analyzed nor ruled on a single one of them. The district court erroneously found that since Mr. Thompson signed a pre-printed consent form that had been read to him subsequent to those violations, the district court need not consider those violations. This, of course, is contrary to well-established Supreme Court and Seventh Circuit precedent. Well, you think the whole sequence adds up to, you have an objection thing, because the guy, Bosley, he was a known guy, right? He was known, he was known to law enforcement. Okay, he picks somebody up, they go around the block, and somebody gets out and goes in. Okay. That's right. That's all right, right? I'm sorry? They've got somebody suspicious. They, for the first time, saw our client, Mr. Thompson, for the first time, get in the car with Mr. Bosley and drive around the block, but they had no idea who he was, and they had never seen him before. Okay. But more importantly for this. Because they're pretty curious about who he is, I think. Of course they're curious about it. Okay, so they're watching. There's nothing wrong with them being curious. Okay, that's important. There's nothing wrong for that first encounter, or first view. There's nothing wrong. We've not challenged the surveillance or any of that. Okay. Once they stopped Mr. Thompson in his lobby, things changed dramatically. But the important point for this court is that we alleged, in very extensive detail in the district court, each of these violations. The court needed to consider each of them individually. The court considered none of them. Why does consent wipe out the previous violations? Why does it or does it not? I'm sorry. Why doesn't it wipe them out? Because, first of all, there was no assessment. Was he forced to consent, to sign the consent? We would argue that yes, that there was coercion. And the problem is we don't know as a fact. Why do you think he was forced to consent? Because we felt he was illegally arrested. He watched a neighbor who was an uninvolved citizen be ordered by these same agents out of his apartment at gunpoint while they illegally searched his apartment. They made a mistake. That's a pretty significant mistake. They make mistakes all the time.  Not of that magnitude, Judge. If he decides at the end of this process, his encounter with the police, to consent, you know, why isn't that decisive? Because both the Supreme Court and this court... He wasn't coerced to consent. Was he coerced to consent? We believe the totality of those circumstances led to it. But more importantly... Oh, come on. And why do you think he was coerced? Because he was illegally arrested. Look, quiet down. Was he afraid that if he didn't consent, they'd beat him up? What would have forced him, in his own mind, to consent? As they say, fear of violence against him or what? The consent to search was to search an apartment that he did not want them to search. So he was perhaps concerned about their need to search the apartment. But we don't know that, Judge. And here's... If I can answer the question the court initially asked me. The Seventh Circuit and the Supreme Court have said, if there are Fourth Amendment violations that have occurred, the court has to evaluate whether or not the consent was tainted by those violations. There's no dispute about those facts. Well, that's why I asked you whether he felt that if he didn't sign the consent form, he'd be beaten up or something else terrible would happen, or whether he signed it voluntarily. He did not sign it voluntarily, in our view. But the problem is we don't know what the district court... How do you know he didn't sign it voluntarily? Because his testimony was he didn't do it until after they had already found... Yes, I know that. Already what? Because it could still have been voluntary, right? After all this has happened, maybe he decides better to go along with them. Maybe they'll treat him better if he consents and so on. Correct. That could be the case. That is not our position. But you said already what? Pardon? You said already what? They haven't found the contraband yet, have they, when he consented? Well, there's a dispute on those facts. Well, that's kind of the key. The way I understood it, they did a, what do you call it when you sweep? A protective sweep. A protective sweep, and then they come back and they come up with this consent. Now, I guess what you're saying is he knew the writing's on the wall. A search is not going to be handy for him. That may be the case. And he has a right not to consent. What I'm saying is... But he also has a right to consent. But what I'm saying is... Well, he also has a right to consent if he wants to. He can if he wants, but that doesn't eliminate the district court's responsibility, which it abdicated here. Judge Schader never considered, never evaluated the Fourth Amendment violations that we maintained occurred here. He must do that under the law. Now you've changed the subject. No, that's always been it. I didn't change the subject. The question whether the consent wipes out... It does not wipe out if the... Well, it does if he wants to consent. As Judge Emanuel said, he knows there's going to be a search. They can get a warrant very easily. So he figures, well, play ball with them, you know, may get slightly better treatment from them. Of course he did. The fact of the matter is... If you could just recite the encounters that you think... There was, in our view, the five challenges we made, an illegal Terry stop, an illegal frisk. A Terry stop was what? In the lobby. Yeah, after they... After they came in. Because they saw he's the guy that got out of the car. That's correct, Judge. Okay, that's a Terry stop. And even if the court here were to conclude that there was a valid Terry stop, there were four other violations that occurred. Okay, what's the next one? There was an illegal frisk. Following that, there was an illegal seizure. He consented to that, didn't he? No, he did not. Well, he didn't object to it, I guess is what I'm saying. They didn't give him an opportunity. They patted him down and searched him. They then, and this is a critical fact, they seized his keys, which allowed them to operate the elevators, allowed them to unlock his door because he did not tell them where he lived and they did not know where he lived. There was then, upon the seizure of the keys, he was no longer free. No reasonable person had had his car keys, his house keys. He was no longer free to leave, so he was effectively under arrest without probable cause and the protective sweep was bad. The district court... The key is the key. The key is, I would agree. I think the key is the main point, but that's not the only point. He didn't ask for them back, I've got to have my key, or he didn't ask them to have it back and he'd start the elevator. He didn't, everything, once they got the key, then they went up and tried one door and it didn't work. Well, they went to one door and ordered a guy out who had nothing to do with this at gunpoint and searched his apartment without permission. That was not a good idea, was it? No, it was not a good idea. And so, I admit, the guy is in bad shape. Don't interrupt Judge Manuel, please. You're correct. It's a bad situation for him and they've got the keys. Now, if he says, I want my keys back, well, then now, we've got to get on the elevator, we just want to go up there, and then, of course, the other guy's been on the 9th floor, had a chance encounter with him, and now when he gets, what's his name, Adams or something, when he gets down on the 1st floor, he says, yeah, that's the guy I just saw get off the 9th floor, and he lies about having been on the 9th floor. I know you keep turning away. No, no, I understand. I'm hearing what you're saying, Judge, and I... I think all of that should have been evaluated and then determined to be okay as the process proceeded. That's right, because that's what the precedent has always held, that the district court has to consider those violations and then assess whether or not those, if those violations occurred, as we believe they did, did they then taint the consent? The consent is really the back end of the analysis here. Judge Shader never, ever considered any of those things. He jumped right to the consent, which is skipping steps, and all we're asking is to send this back, to ask the district court to do the work that it should have done the first time around. I understand I've got the red light. I'd ask the court's indulgence for a couple of minutes to rebut. Okay, thank you, Mr. Murphy. Thank you. Mr. Parente? May it please the court, my name is Chris Parente and I represent the United States. Counsel has just stated that the district court, quote, ignored voluntariness. What the district court said could not be more clear. Quote, there is not the slightest question that Thompson's consent was knowing as well as voluntary. That is not ignoring voluntariness. The court went further, saying on the key issue of whether his oral and written consent to search his residence was both knowing and voluntary, an affirmative answer is clearly called for. The district court had a full-day suppression hearing on this matter, heard all of these different facts in different scenarios, had a post-hearing briefing, reviewed all of that, and then issued its order in this case. It heard all of these arguments, and what's important for the court to note here is it completely rejected the defendant's versions of events. And once you do that, there's no constitutional violations for the court to consider. And the court was clear. Not to put too fine a point on it, Thompson's version of events is not at all believable. The district court made clear he doesn't believe what the defendant's version of events is, so there's no constitutional violations for the district court to analyze. It looked at the version of events through Special Agent Reynolds' testimony, which doesn't present any constitutional issues. Well, as time goes on, you know, after he's identified as the guy to get out of Bosley's car inside, because the other people are tracing this... Bosley, isn't that his name? Bosley, correct, Your Honor. Yeah, Bosley, they're watching him, and it's only when he stops, somebody gets in the car, go around the block, and he gets out. There's pretty much... he wasn't asking for directions. So he goes in, and now they're watching him, and that's when they encounter him. Correct. Now, I don't know what it took all day, but whatever it was, apparently they discussed all these things. And it does seem that once he gave the consent, he thought there may be something in it for him to be cooperative, and there was, because as I understand it, they didn't arrest him for some period of time. That's correct, and he didn't cooperate. And they were calling him. He was cooperating, doing some other things, thinking maybe not get off the hook, but maybe have a lot better chance to get something less. I don't know. But consent can be for a lot of reasons. That's correct. I guess that's what you're saying. Correct. Okay. And again, the defendant's version before the district court was that agents went through the house, found all the things, and then said sign the consent form. The judge discounted that and said absolutely not. Because that's important. He didn't find all the contraband and say sign here. Correct. Then you would have a constitutional violation for the court to address. But by saying I don't believe anything that Mr. Thompson testified to, there's nothing for the court to address there because the court followed the testimony of Agent Reynolds, which is I presented him with a form that said you have the right to refuse consent, will you consent, and he signed it and then cooperated. And then they searched. And then they searched. If there's no other questions from the court, the government would ask that you affirm the district court's denial of the motion to suppress. Okay. Thank you, Mr. Parenti. Mr. Murphy, do you have anything further? Yes. Really, just a couple of quick points. Mr. Parenti talked about the judge making a finding that there was no involuntariness. It's important to recognize that there was no analysis attached to that. It was a statement. It was as if he showed his answer when my teachers, the nuns used to yell at me when I did math, show your work. Judge Schrader didn't show his work here. So how he reached that conclusion, we don't know. But more importantly, again, that's the tail end of this entire analysis. There were all of these extensively argued Fourth Amendment violations that the case law, the precedent, both from the Supreme Court and this court have said a court has to consider in assessing whether or not a consent has been tainted. The district court did none of that, not one bit. And finally, what I guess I'd like to say is there's a bit of a red herring by the government here on this credibility issue. First of all, most of the facts were not in dispute. There were some divergence on some issues. We are not asking this court to consider the district court's credibility findings. This is not about credibility. This is about the fact that the district court did not do the analysis that it's required to do. So we're not asking the court, and the court doesn't need to consider whether or not the district court's What would be an example of the analysis that you think the judge should have conducted? Well, I think what my view is, is he should have explicitly argued each of those five violations that occurred in our mind. We feel that he should have answered each of those and then said why those violations either were not violations or even if they were violations, they no longer tainted the consent. That's what we're saying he should have ruled. He didn't do any of that. The opinion is entirely blank on that. He quite literally jumped to the consent and did not respond to our arguments. How would the judge decide whether his consent was tainted? Well, there's a three-step analysis. The judge is supposed to look at the temporal proximity of the illegality or violation to the signing of the consent. What does that mean? How soon it was. How soon after what? How soon after the Fourth Amendment violation, the consent was signed. The assumption that if it was signed three, four, five hours later, it was going to be less attached to that Fourth Amendment violation. You're talking about the keys, it seems to me. When they got the keys and he didn't get them back. Correct, and that's a violation that we think the judge needed to consider. Maybe he comes out against us, Judge, but we don't know. Maybe he didn't even ask for them back. He didn't try to get them back. Seizing the keys in and of themselves is a violation, whether he asked them for them back or not. Was seizing getting on the elevator, is that how they seized them? Is that what you're saying? I'm sorry. Couldn't have gotten on the elevator without the keys, and therefore. We're saying that they could not have operated the elevator without the keys. They could not have opened the door. They didn't know what apartment he was in without those keys. The keys are, you're correct, that they're very important. Maybe Judge Shader, maybe the district court doesn't. Why would that have tainted the consent? Because that occurred, I would say, any fair reading of the text, it occurred within 10 to 15 minutes of the illegal seizure. There were no intervening circumstances between the seizure and the signing of the consent. I don't see the connection. Well, all I'm saying is there may not be, Judge. You may be right. What we don't know is what the district court was thinking, because the district court didn't answer. This court would be in a much better circumstance of evaluating that had the district court followed the analysis that this court has always said it should follow. Thank you. Wait a second. You said the time interval between the keys and the consent, you said there were two other things the judge should have considered? There is the temporal timeframe, there's intervening circumstances, and the purpose and flagrancy of the illegal conduct. And so we laid out in great detail why we thought each of those violations were legitimate violations, and we also laid out specifically why there was remaining taint. Now, is the judge supposed to determine, use your three factors to determine whether there's a taint? Is he supposed to do that on the basis of testimony? On all the evidence in front of him. Pardon? On all the evidence in front of him. That's correct. But he's not, was there testimony? Yes. There was probably three hours of testimony. There were fines. By whom? By Agent Reynolds, another agent whose name eludes me now, by my client, and by a friend of my client. How long did the hearing last? I mean, the government says all day, but I would say totality about three hours. So Thompson denied that he had voluntarily signed the consent form? He did not. He had a different version of events than the government. Well, what did he say about the signing of the consent form? No, he acknowledges he signed the consent form. No, what did he say? Did he say he was afraid, or he was intimidated, or they threatened him, or what? That portion of the testimony, the reason he signed it was because, according to his testimony, they had already found the drugs, and they said, We won't arrest you. That's a huge difference, isn't it? I mean, that's his reason for consenting, and the judge said he doesn't believe that. But that's fine. A judge can make that after the judge makes the finding about the Fourth Amendment violations and the taint. The Supreme Court in Akau's case, I don't understand. The judge either believes him or doesn't believe him. This isn't about credibility. Pardon? This is not a case about credibility. This is about the judge not doing credibility. I thought you said Thompson testified about the circumstances of his signing the consent, which was different from the testimony of the agents. Because even if the Did he? He did testify that way. What if the judge didn't believe him? I'm trying to answer that. Because even if the judge determined there was voluntary consent, the law is clear that the judge also has to determine whether or not it was tainted. The events preceding the consent would negate the consent anyway. It wouldn't make any difference. I'm sorry, Judge. What you're saying is the events preceding the confession or the admission or the agreement to let in would taint it to the point where it doesn't make any difference. That is absolutely correct. Well, at least I understand your point. Thank you. It took me long enough to get there. I don't understand this at all. You say he gave voluntary consent, but it was tainted? What on earth is that? They wouldn't have had him to consent. It's voluntary. Judge, this is exactly the... It's because essentially the court is saying whether it's voluntary consent, it's no longer meaningfully constitutionally voluntary. What does that mean? It means exactly that. If he, knowing everything, knowing the risks, the possible benefits of what, of consenting, decides to consent, that's voluntary. You said it may have been voluntary. I'm saying... So what does it mean to taint a voluntary statement so that it's treated as if it were involuntary? You quoted from a case, I believe. Pardon? You quoted from a case. That's correct. You quoted what? Tell me the case. The case is... The cases are Robles and Ortega and Kaupp, which mandate that when a Fourth Amendment violation... Are they this court's cases? Robles and Ortega is a Seventh Circuit case. That's correct. And it makes it very clear... Is your quote absolute, or have you taken liberties? I'm not taking liberties, Judge. I've been doing this a long time, not taking liberties here. That's where you got it. Whatever it means, some judge told you. This is exactly what the Seventh Circuit said. I still don't know what you're talking about. Well, Judge, what I'm talking about is that there's an analysis that has to occur which did not occur. Tell me what the connection is between a taint and testimony conceded to be voluntary. It's no longer... Don't interrupt me, would you please? I'm sorry. If it's conceded to be voluntary, what could be the significance of a taint? The taint could render it involuntary, but if it was voluntary, I don't get the role of the taint. We don't consider the consent that he filed and signed as voluntary because it was tainted by the prior one. No, you said it could well have been done voluntarily. You didn't say that. I misspoke then, but if that's the way the court decided to read it, what I'm saying is he signed a consent form, but that was not voluntary because had the Fourth Amendment violated... You said it was voluntary. Well, I'm telling you now that if that's how you saw it, Judge, we are not conceding that form. Look, it would be voluntary if he thought the contraband was already discovered. Now he's got no choice, so I'm going to see that I get the best deal I can, so I'm going to sign it. The judge said he didn't believe that he had found the contraband before they signed it, and I think that's the pivotal thing and why he could have signed it, as you call it, because of a taint. Well, the taint that he alleges, the judge said didn't occur. Because... I don't have to agree with you to get to a point. The point is that they wouldn't have had him there to ask if it had already violated his rights. If you want to do yourself a favor, you can go sit down. That's the best advice I've gotten all day, Judge. Thank you. Let's see. Our last case...